1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

DIANA MARIE LOPEZ,

              Plaintiff,

    v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

              Defendant.

Case No. EDCV 16-1853 JC

MEMORANDUM OPINION AND
ORDER OF REMAND

## I.   SUMMARY

18
19
20
21
22

      On August 29, 2016, Diana Marie Lopez ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

23
24
25
26

      This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The Court has taken both motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; September 1, 2016 Case Management Order ¶ 5.

27
28

---

[1]Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is hereby substituted for Commissioner Carolyn W. Colvin as the defendant in this action.

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On March 9, 2012, plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits alleging disability beginning on March 1, 2010 ("alleged onset date"), due to depression. (Administrative Record ("AR") 20, 185, 192, 238). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on August 1, 2014. (AR 37-59).

On September 22, 2014, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 20-31). Specifically, the ALJ found that plaintiff had engaged in substantial gainful activity during the period from January 2012 through December 2012. (AR 22). In addition, for the periods during which plaintiff did not engage in substantial gainful activity (*i.e.*, from the alleged onset date through December 31, 2011, and from January 1, 2013 through the date of the decision), the ALJ found: (1) plaintiff suffered from the following severe impairments: bipolar disorder, psychotic disorder, dysthymic disorder, and mixed personality disorder with borderline and antisocial features (AR 23); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 23-24); (3) plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels with additional nonexertional limitations[2] (AR 24); (4) plaintiff was unable to perform any past

---

[2]The ALJ determined that plaintiff could (i) understand, remember, and carry out simple job instructions, but would be unable to perform work that would require directing others, abstract thought, or planning; (ii) maintain attention and concentration to perform simple, routine and repetitive tasks in a work environment free of fast paced production requirements; (iii) have
(continued...)

relevant work (AR 29); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically hospital cleaner, laundry worker, and hand packager (AR 29-30); and (6) plaintiff's statements regarding the intensity, persistence, and limiting effects of subjective symptoms were not entirely credible (AR 25).

On June 24, 2016, the Appeals Council denied plaintiff's application for review.  (AR 1).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is required to use the following five-step sequential evaluation process:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

///

_____

(...continued)
occasional interaction with coworkers and supervisors, and no direct interaction with the general public; and (iv) work in an environment with occasional changes to the work setting and occasional work-related decision making.  (AR 24).

3

(2)     Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)     Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)     Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citations omitted); see also 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (explaining five-step sequential evaluation process).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).

///

4

1    Substantial evidence is "such relevant evidence as a reasonable mind might

2    accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389,

3    401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but

4    less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan,

5    911 F.2d 180, 183 (9th Cir. 1990)).  To determine whether substantial evidence

6    supports a finding, a court must "'consider the record as a whole, weighing both

7    evidence that supports and evidence that detracts from the [Commissioner's]

8    conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001)

9    (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

10   While an ALJ's decision need not discuss every piece of evidence or be

11   drafted with "ideal clarity," at a minimum it must explain the ALJ's reasoning

12   with sufficient specificity and clarity to "allow[] for meaningful review." Brown-

13   Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citations and internal

14   quotation marks omitted); Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012)

15   (citation and quotation marks omitted); see also Craft v. Astrue, 539 F.3d 668, 673

16   (7th Cir. 2008) (ALJ must provide "accurate and logical bridge" between evidence

17   and conclusion that claimant is not disabled so reviewing court "may assess the

18   validity of the agency's ultimate findings") (citation and quotation marks omitted);

19   see generally 42 U.S.C. § 405(b)(1) ("ALJ's unfavorable decision must, among

20   other things, "set[] forth a discussion of the evidence" and state "the reason or

21   reasons upon which it is based").

22   An ALJ's decision to deny benefits must be upheld if the evidence could

23   reasonably support either affirming or reversing the decision. Robbins, 466 F.3d

24   at 882 (citing Flaten, 44 F.3d at 1457).  Nonetheless, a court may not affirm

25   "simply by isolating a 'specific quantum of supporting evidence.'" Id. at 882

26   (citation omitted).  In addition, federal courts may review only the reasoning in the

27   administrative decision itself, and may affirm a denial of benefits only for the

28   ///

5

reasons upon which the ALJ actually relied.  Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted).

Even when an ALJ's decision contains error, it must be affirmed if the error was harmless.  Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014).  An ALJ's error is harmless if (1) it was inconsequential to the ultimate nondisability determination; or (2) despite the error, the ALJ's path may reasonably be discerned, even if the ALJ's decision was drafted with less than ideal clarity.  Id. (citation and quotation marks omitted).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record.  Brown-Hunter, 806 F.3d at 492 (citations omitted).  When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate.  See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends that a reversal or remand is warranted, in part, because the ALJ improperly rejected the opinions expressed by Dr. Jaga Nath Glassman, a consultative examining psychiatrist, in the report of an April 8, 2013 Psychiatric Disability Evaluation of plaintiff ("Dr. Glassman's Report").  (Plaintiff's Motion at 5-9; AR 356-61).  The Court agrees.  As the Court cannot confidently conclude that the ALJ's error was harmless, a remand is warranted.

### A.   Pertinent Law

In Social Security cases, the amount of weight given to medical opinions generally varies depending on the type of medical professional who provided the opinions, namely "treating physicians," "examining physicians," and "nonexamining physicians" (e.g., "State agency medical or psychological consultant[s]").  20 C.F.R. §§ 404.1527(c)(1)-(2) & (e), 404.1502, 404.1513(a); 416.927(c)(1)-(2) & (e), 416.902, 416.913(a); Garrison, 759 F.3d at 1012 (citation

1   and quotation marks omitted).  A treating physician's opinion is generally given

2   the most weight, and may be "controlling" if it is "well-supported by medically

3   acceptable clinical and laboratory diagnostic techniques and is not inconsistent

4   with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R.

5   §§ 404.1527(c)(2), 416.927(c)(2); Orn v. Astrue, 495 F.3d 625, 631 (9th Cir.

6   2007) (citations and quotation marks omitted).  In turn, an examining, but non-

7   treating physician's opinion is entitled to less weight than a treating physician's,

8   but more weight than a nonexamining physician's opinion.  Garrison, 759 F.3d at

9   1012 (citation omitted).

10      A treating or examining physician's opinion, however, is not necessarily

11  conclusive as to either a physical condition or the ultimate issue of disability.

12  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  An

13  ALJ may reject the uncontroverted opinion of either a treating or examining

14  physician by providing "clear and convincing reasons that are supported by

15  substantial evidence" for doing so.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th

16  Cir. 2005) (citation omitted).  Where a treating or examining physician's opinion

17  is contradicted by another doctor's opinion, an ALJ may reject such opinion only

18  "by providing specific and legitimate reasons that are supported by substantial

19  evidence."  Garrison, 759 F.3d at 1012 (citation and footnote omitted).

20      An ALJ may provide "substantial evidence" for rejecting a medical opinion

21  by "setting out a detailed and thorough summary of the facts and conflicting

22  clinical evidence, stating his [or her] interpretation thereof, and making findings."

23  Id. (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)) (quotation marks

24  omitted).  An ALJ must provide more than mere "conclusions" or "broad and

25  vague" reasons for rejecting a treating or examining physician's opinion.  Embrey

26  v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988); McAllister v. Sullivan, 888 F.2d

27  599, 602 (9th Cir. 1989) (citation omitted).  "[The ALJ] must set forth his [or her]

28  ///

1   own interpretations and explain why they, rather than the [physician's], are

2   correct."  Embrey, 849 F.2d at 421-22.

3   **B.    Analysis**

4          First, the ALJ apparently gave less weight to Dr. Glassman's opinions, in

5   part, based on an "inference" that plaintiff had "exaggerated her mental

6   complaints" during the psychiatric consultative examination with Dr. Glassman.

7   (AR 27).  Specifically, the ALJ wrote "the body of [Dr. Glassman's Report] . . .

8   implies that the [plaintiff] was overly dramatic, creating an inference of

9   exaggeration."  (AR 27) (citing Ex. 5F at 7-8 [AR 359-60]).  Substantial evidence

10  does not support the ALJ's finding.  The ALJ appears to be referring to Dr.

11  Glassman's finding that plaintiff "exhibited a marked 'dramatic/long-suffering'

12  attitude and demeanor."  (AR 360).  Nonetheless, although the ALJ "adopt[ed] the

13  opinions of the State Agency review psychiatrists [sic], in particular, the second

14  review psychiatrist[,]"[3] neither state agency doctor drew such an inference from

15  any portion of Dr. Glassman's Report.  (AR 63, 73, 88, 103); cf., e.g., Tommasetti

16  v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008) (ALJ's "own speculation" not

17  substantial evidence supporting ALJ conclusion).  Moreover, Dr. Glassman's

18  finding regarding plaintiff's attitude and demeanor appears simply to document

19  characteristics displayed by individuals, like plaintiff, who have the types of

20  personality disorders Dr. Glassman diagnosed – i.e., "Mixed Personality Disorder,

21  Borderline and Antisocial Features."  (AR 360); see, e.g., American Psychiatric

22  Association, Diagnostic and Statistical Manual of Mental Disorders, 685 (4th ed.

23  2000) ("[Individuals with] Antisocial, Borderline, Histrionic, and Narcissistic

24  Personality Disorders . . . often appear dramatic, emotional, or erratic.").

25

26          [3]The record reflects that plaintiff's applications for benefits were evaluated at the initial
27  level by a state agency *psychologist* – *i.e.*, Barbara Moura, PsyD.  (AR 63, 67, 73, 77).  Plaintiff's
    claims were reviewed by a state agency *psychiatrist*, *i.e.*, Dr. Jay S. Flocks, at the reconsideration
28  level.  (AR 88, 96, 103, 111).

1   Second, the ALJ wrote that Dr. Glassman's Report "was vague and did not

2   specify which limitations were moderate and which limitations were marked[,]"

3   and concluded "the overall evidence does not support a finding of marked

4   limitations such that [plaintiff] is unable to engage in work." (AR 27).  Such

5   broad and vague reasons, however, are insufficient for giving less weight to the

6   opinions in Dr. Glassman's Report.  See McAllister, 888 F.2d at 602.  For

7   example, the ALJ failed to explain precisely how Dr. Glassman's reporting was

8   deficient or how the medical record as a whole undermined the examining

9   psychiatrist's opinions.  In fact, on reconsideration Dr. Flocks observed that Dr.

10  Glassman had provided "his usual thoughtful report." (AR 88, 103).  To the

11  extent the ALJ felt that Dr. Glassman's Report was ambiguous, the ALJ should

12  have contacted Dr. Glassman to clarify any ambiguity.  See Mayes v. Massanari,

13  276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted) (Although plaintiff bears

14  the burden of proving disability, the ALJ has an affirmative duty to assist the

15  claimant in developing the record "when there is ambiguous evidence or when the

16  record is inadequate to allow for proper evaluation of the evidence."); Tonapetyan

17  v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (ALJ has duty to develop record

18  fully whether or not claimant is represented – a duty that is "heightened where the

19  claimant may be mentally ill") (citations omitted).

20  Third, even so, the ALJ's evaluation of such opinion evidence was not

21  supported by substantial evidence.  For example, the ALJ primarily relied on the

22  opinions of Dr. Flocks, the state agency psychiatrist at the reconsideration level of

23  review.  (AR 29).  Nonetheless, without more, Dr. Flocks' opinions do not

24  constitute substantial evidence supporting the ALJ's rejection of any portion of

25  Dr. Glassman's Report.  In short, it appears that Dr. Flocks relied almost entirely

26  on the same objective findings as Dr. Glassman.  See Tonapetyan, 242 F.3d at

27  1149 (citation omitted) (contrary opinion of non-examining medical expert may be

28  "substantial evidence" supporting an ALJ's decision only to the extent it is

9

consistent with other *independent* medical evidence); <u>cf.</u> <u>Orn</u>, 495 F.3d at 632
("When an examining physician relies on the same clinical findings as a treating
physician, but differs only in his or her conclusions, the conclusions of the
examining physician are not 'substantial evidence.'").  Indeed, the record suggests
that Dr. Flocks had concluded that plaintiff's applications could not adequately be
evaluated at the reconsideration level without an updated psychiatric consultative
examination like Dr. Glassman's.  (<u>See, e.g.</u>, AR 101 [Disability Determination
Explanation at Reconsideration level noting that a "specific" consultative
examination was "needed" because "[t]he evidence as a whole, both medical and
non-medical, is not sufficient to support a decision on the claim"]; AR 103 [Dr.
Flocks noting at reconsideration level "we will need an updated [consultative
examination] with a Board Certified/Eligible Psychiatrist fir [sic] evaluation and
MSS re: [plaintiff's] affective disorder, at this point."]).

      To the extent defendant suggests that the ALJ properly gave less weight to
Dr. Glassman's opinions simply because they were contradicted by multiple
medical opinions in the record (Defendant's Motion at 2-4), defendant's
suggestion lacks merit.  <u>See</u> <u>Garrison</u>, 759 F.3d at 1012 (even when contradicted,
an examining physician's opinion may only be rejected based on "specific and
legitimate reasons that are supported by substantial evidence") (citations and
internal quotation marks omitted); <u>cf, e.g.</u>, <u>Brewer v. Astrue</u>, 2013 WL 140241, *2
(C.D. Cal. Jan. 9, 2013) ("[T]he contradiction of a treating physician's opinion by
another physician's opinion triggers rather than satisfies the requirement of stating
'specific, legitimate reasons.'") (citations omitted).

      Finally, the Court is unable confidently to conclude that the ALJ's errors
were harmless.  For example, Dr. Glassman opined, in pertinent part, that plaintiff
"[had] impairments in her capacity to understand and follow even simple
instructions consistently."  (AR 360-61).  At the hearing, the vocational expert
testified that a hypothetical individual with the same characteristics as plaintiff

10

1  would be unable to engage in any "competitive employment" to the extent Dr.

2  Glassman's opinion was interpreted "[to] mean[] that [the individual] cannot

3  follow simple instructions."  (AR 56).  In light of the foregoing, the Court cannot

4  confidently conclude that the ALJ's failure properly to consider Dr. Glassman's

5  Report was inconsequential to the ALJ's nondisability determination at step five.

6  See, e.g., Sawyer v. Astrue, 303 Fed. Appx. 453, 455 (9th Cir. 2008) (ALJ's

7  failure properly to consider medical opinions not harmless because error was

8  "directly relevant to the ultimate issue" of the exertion level of work claimant

9  could perform) (citing Stout, 454 F.3d at 1055).

10      Accordingly, a remand is required, at a minimum, so the ALJ can reevaluate

11  the medical opinion evidence.

12  **V.    CONCLUSION**[4]

13      For the foregoing reasons, the decision of the Commissioner of Social

14  Security is reversed in part, and this matter is remanded for further administrative

15  action consistent with this Opinion.[5]

16      LET JUDGMENT BE ENTERED ACCORDINGLY.

17  DATED:  March 27, 2017

18                                _____
                                                    /s/
19                                Honorable Jacqueline Chooljian
20                                UNITED STATES MAGISTRATE JUDGE

21

22  _____

23  [4]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's
    decision, except insofar as to determine that a reversal and remand for immediate payment of
24  benefits would not be appropriate.

25      [5]When a court reverses an administrative determination, "the proper course, except in rare
    circumstances, is to remand to the agency for additional investigation or explanation."
26  Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and
    quotations omitted).  Remand is proper where, as here, "additional proceedings can remedy
27  defects in the original administrative proceeding. . . ."  Garrison, 759 F.3d at 1019 (citation and
    internal quotation marks omitted).
28